UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH LEE DURON,

    Plaintiff,

v.                                                         Case No. 1:20-cv-112
                                                         Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB).

Plaintiff filed this application on May 31, 2016, alleging a disability onset date of March 29, 2016.  PageID.31.  The amended onset date is consistent with the administrative record, which reflects that an administrative law judge (ALJ) entered a decision denying plaintiff's previous application for benefits on March 28, 2016.  PageID.108-120.  Plaintiff identified his disabling conditions as postural orthostatic tachycardia syndrome (POTS), gastroesophageal reflux disease (GERD), fibromyalgia, anxiety disorder, and severe back pain.  PageID.228.  Prior to applying for DIB, plaintiff earned a GED and had past employment as a food processing supervisor and a food process laborer/mixer operator.  PageID.46, 229. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on December

18, 2018. PageID.31-48. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months.  *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

##    II.    ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the amended onset date of March 29, 2016, through his date last insured of September 30, 2018.  PageID.34.  At the second

step, the ALJ found that through the date last insured, plaintiff had severe impairments of gastroparesis, mood disorder secondary to health problems with mixed anxiety and depression, unspecified cognitive disorder, POTS, history of type II atrioventricular blocks, and degenerative disc disease of the thoracic spine. *Id*. At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.35.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 404.1567(b) except lift and carry up to 10 pounds occasionally; sit for 6 hours in an 8-hour workday and stand and or walk up to 2 hours in an 8-hour workday; never climb ladders, ropes or scaffolding, but occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch and crawl; limited to no exposure to hazards including unprotected heights and dangerous moving machinery; and no operation of motorized vehicles; further limited to simple tasks and simple work related decisions defined as SVP 1 or 2 type jobs; and may have frequent contact with coworkers and supervisors, but no more than occasional contact with the public.

PageID.38. The ALJ also found that through the date last insured, plaintiff was unable to perform any past relevant work. PageID.46.

At the fifth step, the ALJ determined that through the date last insured, plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.47-48. Although the ALJ framed plaintiff's residual functional capacity (RFC) in terms of light work, the ALJ adopted the vocational expert's (VE's) testimony that an individual with this RFC could perform sedentary occupations in the national economy such as security system monitor (50,000 jobs), table worker (45,000 jobs), and document preparer (50,000 jobs). *Id*. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in

the Social Security Act, from March 29, 2016 (the amended alleged onset date) through September 30, 2018 (the date last insured).  PageID.48.

### III.  DISCUSSION

Plaintiff has raised three issues on appeal.

**A.  The ALJ committed reversible error by not properly giving Plaintiff's new case a fresh evidentiary look in accordance with Sixth Circuit precedent.**

Plaintiff contends that the ALJ erred when he failed to give plaintiff's claim a fresh evidentiary look in accordance with *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018) and incorrectly relied on *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (1997).  The Court's review of this alleged error begins at step four of the sequential evaluation, when the ALJ set out his procedure for reviewing plaintiff's residual functional capacity (RFC):

> Absent new and material evidence documenting a significant change in the claimant's condition, residual functional capacity findings made in a prior hearing decision by an administrative law judge are binding on the present adjudicator provided the new claim arises under the same title of the Social Security Act or there has not been a change in the law (Acquiescence Rulings 98- 4(6)). Nevertheless, the evidence, discussed in detail below, in particular the documentation pertaining to the claimant's POTS, second degree type II atrioventricular block with near syncome [sic], is both new and material, and thus warrants a deviation from the finding delineated in the prior decision. Thus, the findings contained in the prior final and binding decision issued on August 17, 2012 are no longer applicable and are not adopted herein. Accordingly, the claimant has the residual functional capacity as noted above. *Drummond v. Commissioner of Social Security*, 126 Fed 3rd 837 (6th Circuit, 1997).

PageID.38.

The referenced Acquiescence Ruling (AR) 98-4(6) addressed the Sixth Circuit's decision in *Drummond*, 126 F.3d 837, and provides in pertinent part,

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the

5

unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98-6(4) (footnotes omitted).

Here, the ALJ preformed a detailed review of plaintiff's medical records from his alleged onset date through the date last insured (PageID.38-46) and concluded:

> In sum, the above residual functional capacity assessment is supported by the objective medical evidence of record as a whole in this case, which indicates that the claimant's limitations will not interfere with his ability to function independently, appropriately, effectively and on a sustained basis within the residual functional capacity defined above. The undersigned considered the claimant's allegations and found them neither consistent with nor well supported by the objective medical findings, the claimant's statements about his activities, his presentation on examinations, his conservative treatment regimen, his doctor's observations and the opinions of the DDS consultants.

PageID.46.

The issue before the Court is whether the ALJ correctly decided this disability claim under *Earley* or incorrectly decided this claim under *Drummond*. In *Earley*, 893 F.3d 929, the Sixth Circuit reversed the decision of an ALJ who gave an overly expansive construction to *Drummond*:

> [The claimant] Earley applied for benefits in 2010. In 2012, Judge Redmond marched through the five-step analysis, found her capable of light work, and decided she was not disabled because a sufficient number of light-work jobs were available to her.
>
> In 2012, Earley filed a new application for benefits, seeking benefits for a new period, namely from May 16, 2012 forward. Judge Redmond reviewed her case again. Instead of asking whether the evidence supported Earley's new application, Judge Redmond thought he was precluded by the first ruling. In his view, he was "bound by the findings of [the] previous Administrative Law Judge" because Sixth Circuit case law gave those findings "preclusive effect." A.R. at 22.
>
> That is not how it works. An individual may file a second application—for a new period of time—for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory threshold.

*Earley*, 893 F.3d at 932.  In this regard, the court recognized that,

> [A]n applicant remains free to bring a second application that introduces no new evidence or very little new evidence after a failed application. But she should not have high expectations about success if the second filing mimics the first one and the individual has not reached any new age (or other) threshold to obtain benefits. What's past likely will be precedent in that setting—as indeed it should be in a system designed to apply the law consistently to similarly situated individuals.

*Id*. at 933-34.  In addition, the court observed that,

> Fresh review is not blind review. A later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making.

*Id*. at 934.

As an initial matter, it appears that the ALJ intended to give plaintiff a "fresh" review of his claim.  While the ALJ referred to AR 98-4(6) and *Drummond*, he stated that new and material evidence warrants a deviation from the RFC finding delineated "in the prior proceeding," stating "[t]hus, the findings contained in the prior final and binding decision issued on August 17, 2012 are no longer applicable and are not adopted herein." PageID.38 (emphasis added).  Plaintiff points out that the ALJ erred because he applied *Drummond* to an unidentified 2012 "prior final and binding decision." PageID.38. In response to plaintiff's claim, defendant contends that the reference to the 2012 decision was a scrivener's error, and that the ALJ meant to refer to the March 28, 2016 decision.  *See* Defendant's Brief (ECF No. 19, PageID.476 fn. 3).

Is this a mere scrivener's error as defendant suggests?  To answer that question, the Court will review the record. As discussed, an ALJ previously entered a decision denying benefits on March 28, 2016.  PageID.108-120.  At the administrative hearing, the ALJ stated that "the prior decision is March 28 of '16", and plaintiff's attorney mentioned that although Drummond was "gone" due to the recent Sixth Circuit case (presumably *Earley*), plaintiff's alleged onset date

7

should be changed to March 29, 2016 (the day after the prior decision). PageID.62-63. The record reflects that the ALJ used the March 28, 2016 "prior decision" as the comparison date for plaintiff's present application for benefits, asking plaintiff:

> Q. Now, we have a prior Decision, of course, and that one is dated March 28, 2016. What's changed since then?
>
> . . . .
>
> Q. What kind of treatment were you getting at that time, you know, beginning in 2016?

PageID.67. Finally, with the one exception cited above, the ALJ's present decision refers to the March 28, 2016 decision when referring to the "prior decision." *See* PageID.32, 46, 47. For these reasons, the Court finds that the reference to August 17, 2017 is a scrivener's error, with the correct date being March 28, 2016.

Based on this record, the Court concludes that the ALJ provided a fresh review of plaintiff's claim from March 29, 2016 through his date last insured. The ALJ conducted an extensive review of plaintiff's condition commencing on plaintiff's disability report's onset date of March 29, 2016, finding: that plaintiff presented "new and material" evidence (PageID.38); that this new evidence "warrants a deviation from the [RFC] finding delineated in the prior decision" (PageID.38); and that "the findings contained in the prior final and binding decision . . . are no longer applicable and are not adopted herein" (PageID.38). PageID.38-46, 224. Although the ALJ's review was triggered by an incorrect application of *Drummond*, the Court does not believe that a remand would lead to a different result. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Accordingly, plaintiff's claim of error is denied.

> **B. The ALJ committed reversible error because he did not have substantial evidence to support his residual functional capacity (RFC) for plaintiff.**

Plaintiff contends that the ALJ's decision is flawed because the RFC describes the physical exertion of sedentary work, but refers to plaintiff as having an RFC to perform light work. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). The ALJ determines the RFC "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. § 404.1520(e).

As discussed, the ALJ found that plaintiff had the RFC "to perform a reduced range of light work as defined in 20 CFR 404.1567(b) except lift and carry up to 10 pounds occasionally[.]". PageID.38. The regulations define "sedentary work" and "light work" as follows:

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(a) and (b).

9

Defendant acknowledges that the RFC aligns with the exertional limitations of sedentary work as opposed to light work:

> Plaintiff is correct that the ALJ clearly intended the RFC finding to be for a reduced range of sedentary work, consistent with the hypothetical question presented to the vocational expert. (PageID.38, 97). The RFC finding, restricting Plaintiff to lifting and carrying up to 10 pounds occasionally, sitting for six hours in an eight-hour workday, and standing and/or walking up to two hours in an eight-hour workday, aligns with the agency's definition of sedentary work. (PageID.38). *See* 20 C.F.R. § 404.1567(a); Social Security Ruling (SSR) 83-10.

Defendant's Brief (ECF No. 19, PageID.475). Indeed, when addressing whether plaintiff could perform his past relevant work, the ALJ's decision stated that plaintiff was limited to sedentary work:

> The claimant's past relevant work requires a light to medium level of exertion. The assessed residual functional capacity limits the claimant to sedentary unskilled work. Thus, the claimant was unable to perform past relevant work as actually or generally performed.

PageID.46-47.

The issue for the Court is what to do about this discrepancy in the ALJ's decision involving his reference to "light work" when plaintiff could only perform "sedentary work." Plaintiff contends that this is an error requiring reversal while defendant contends that it "appears to be a scrivener's error that is of no consequence." Defendant's Brief at PageID.475.

Is this another scrivener's error as defendant suggests? To answer that question, the Court will again review the record. The ALJ's first hypothetical question posed to the vocational expert (VE) referred to an individual who "can perform light work as that's defined by the regulations" and who is limited by a number of other restrictions:

> [T]hey can never climb ladders, ropes or scaffolds. They can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. Those are all occasional. This person can have only occasional exposure to unprotected heights, moving mechanical parts and is further limited to doing simple tasks and making simple work-related decisions doing jobs that have an SVP of 1 or 2. This person can have

> frequent contact with coworkers and supervisors, but no more than occasional contact with the public.

PageID.93-94.

The ALJ's second hypothetical question assumed the same individual, "but this person does have some additional limitations," which include a lifting limitation,

> This person can lift and/or carry up to 15 pounds occasionally; stand and/or walk for up to four hours in an eight-hour workday; still sit for up to six hours total in an eight-hour workday. As opposed to occasional, this person can have no exposure to hazards, including unprotected heights and dangerous moving machinery. And can do no operation of motorized vehicles.

PageID.94. In response to the second hypothetical, the VE noted, "[w]ell, light work does suggest lifting up to 20 pounds on an occasional basis and you have specified 15 pounds, so I would keep those same jobs, but reduce the numbers by 25%." *Id*.

The ALJ's third hypothetical – which he also referred to as "hypothetical #2" – involved the same individual as described in the second hypothetical,

> [B]ut this person does require the option to lie down at unpredictable times during the workday. Those can be up to three times a day and this results in unscheduled breaks every day, in additional to regular breaks, including lunch break, each lasting for about 15 minutes and, of course, that's – excuse me, 10 minutes is what I have here. That's, of course, an estimate as well. So you've got up to three extra work breaks a day lasting for up to ten minutes each. I would think that probably precludes all past and other work, doesn't it?

PageID.95. The VE responded, "In my professional opinion, it does." *Id*.

The ALJ's fourth hypothetical question assumed the same individual described in the second hypothetical ("we were talking there about the [sic] being 15 pounds occasionally and all the other restrictions there, which included standing or walking for up to four hours"), but added

> [T]he additional limitation that this person will lift and/or carry up to ten pounds occasionally; sit for up to six hour [sic] total; stand and/or walk for up to two hours total in an eight-hour workday, that would certainly limit him to – limit this person to sedentary work, is that right?

11

PageiD.96-97. The VE agreed that the limitations in the fourth hypothetical would limit the person to sedentary work.  PageID.97.[1]  Based on the limitations in the fourth hypothetical question, the VE testified that such an individual could perform the following jobs: surveillance systems monitor, sedentary, 50,000 jobs nationally; table work, sedentary, 45,000 jobs nationally, and document preparer, sedentary, 50,000 jobs nationally.  PageID.97-98.

> The ALJ's decision summarized the vocational evidence as follows:
>
> Through the date last insured, if the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative sedentary occupations in the national economy such as 50,000 security system monitor (DOT 379.367-010); 45,000 table worker positions (DOT 739.687-182); and 50,000 document preparer positions (DOT 249.587-018).

PageID.47-48.

The issue before the Court is whether the ALJ's RFC finding that plaintiff could perform light work is an error requiring reversal.  As an initial matter, the Court rejects defendant's claim that the ALJ's use of the term "light work" was yet another scrivener's error.  Not only did the ALJ repeatedly refer to light work, he used plaintiff's ability to perform "light work" in referencing the medical-vocational guidelines.[2]  However, despite the ALJ's reference to "light

---

[1] While the transcript indicates a possible misunderstanding as to whether the VE was adopting the restrictions in the second hypothetical or the third hypothetical, the ALJ and VE agreed that the additional limitations were those mentioned in the second hypothetical.  PageID.97.

[2] The medical-vocational guidelines or grids "take account only of a claimant's 'exertional' impairment, that is 'an impairment which manifests itself by limitations in meeting the strength requirements of jobs[.]' 20 C.F.R., Part 404, Subpt. P, App. 2 § 200.00(e)." *Abbott*, 905 F.2d at 926. An ALJ may use the grids, rather than expert testimony, to show that a significant number of jobs exist in the economy when the claimant's characteristics fit the criteria of the

work" in the RFC, the actual limitations in the RFC described sedentary work, the fourth hypothetical question posed to the VE referenced "sedentary work", and the VE testified that plaintiff could perform 145,000 sedentary jobs.

While the ALJ made an error in his decision, he relayed plaintiff's correct vocational limitations to the VE, and the VE identified jobs consistent with those limitations. As the Sixth Circuit explained,

> Under [the social security] regulations, the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an "assessment of [her] residual functional capacity." 20 C.F.R. § 416.920(a)(4)(iv). The vocational expert testifies on the basis of a claimant's "residual functional capacity and . . . age, education, and work experience" and assesses whether the claimant "can make an adjustment to other work." 20 C.F.R. § 416.920(a)(4)(v). <u>The vocational expert's testimony is directed solely to whether, given a claimant's age, experience, and education, along with the ALJ's assessment of what she "can and cannot do," there exist a significant number of employment opportunities for her in the regional and national economies</u>.

*Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004) (emphasis added). Here, the VE's testimony was based on an accurate assessment of what plaintiff "can and cannot do." In addition, if the ALJ had applied the comparable medical vocational rule for sedentary work, *i.e.*, 201.28 (younger individual 18-44, high school graduate or more, skilled or semiskilled – skills not transferable), plaintiff would have been considered not disabled.

The ALJ created a convoluted record. Nevertheless, the Court concludes that the ALJ's error does not require reversal because the VE identified available jobs based on plaintiff's actual limitations. Because the ALJ's error did not affect the outcome of plaintiff's claim, a remand is not required because there is no reason to believe that the remand might lead to a different result. *See Fisher*, 869 F.2d at 1057. Accordingly, plaintiff's claim of error is denied.

---

guidelines. *Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 922 (6th Cir. 1987). *See Bohr v. Bowen*, 849 F.2d 219, 221 (6th Cir. 1988) ("the grids are a shortcut that eliminate the need for calling in vocational experts").

### C. The ALJ committed reversible error because he did not follow the accurate testimony of the VE.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb*, 368 F.3d at 632; *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994).

Plaintiff contends that the ALJ failed to adopt the VE's response with respect to plaintiff's employability:

> [T]he Defendant may rely upon a vocational expert's answer to a hypothetical question only if the assumptions in that question are supported by substantial evidence. Here, the expert did testify that a person could not be employed if he needed to lie down during the work day at unscheduled times due to his condition (PageID.95), which was confirmed by all of the medical evidence.

Plaintiff's Brief (ECF No. 15, PageID.459).

While plaintiff contends that "all of the medical evidence" confirmed that he needed to lie down at unscheduled times during the workday, he has not identified such evidence. Nor has plaintiff identified a medical provider who included this work restriction. The "medical evidence" appears to be plaintiff's self-reporting. In an October 24, 2016 psychological consultative examination, plaintiff reported: that he suffers from POTS syndrome which causes his heart to race or pound; that "every week or two" he feels lightheaded and will drop to his knees;

14

and, that sometimes he has pain and has to lie down. PageID.331. On December 30, 2016, plaintiff reported to a treating physician that he "[d]id have a few episodes of passing out." PageID.386. On August 16, 2018, plaintiff reported to a cardiologist that "[h]e has lightheadedness about 2-6 times per day with numbness in his arms and face" and that the episodes "generally last a couple of minutes." However, plaintiff has no history of syncope.[3] PageID.410. At the administrative hearing, plaintiff identified his fainting and blackouts as occurring "a couple times a day," meaning two to six times a day. PageID.66-67. According to plaintiff's research, the only thing he can do is "lie down until it passes." PageID.67.

Plaintiff contends that the ALJ erred by failing to include the limitation that he needed to lie down during the day as set out in the third hypothetical question. *See* discussion, *supra*. If the ALJ had adopted this work-preclusive limitation, then plaintiff would have been found disabled. However, the ALJ did not adopt this additional limitation. The ALJ's function is to resolve conflicts in the evidence. *See Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 920 (6th Cir. 1987). That is what the ALJ did in this case when he declined to expand the RFC to include plaintiff's claim that he needed to lie down multiple times during the day. Accordingly, plaintiff's claim of error is denied.

### IV. CONCLUSION

Accordingly, the Commissioner's decision will be **AFFIRMED**. A judgment consistent with this opinion will be issued forthwith.

Dated: March 16, 2021 /s/ Ray Kent
RAY KENT
United States Magistrate Judge

---

[3] "'Syncope' is defined as 'a loss of consciousness or a faint,' while 'near syncope' is defined as 'a period of altered consciousness.' 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.00F(3)(b)." *Robertson v. Commissioner of Social Security*, 513 Fed. Appx. 439, 440-41 (6th Cir. 2013).